812 So.2d 487 (2002)
Robert DIAS, Appellant,
v.
STATE of Florida, Appellee.
No. 4D99-4033.
District Court of Appeal of Florida, Fourth District.
March 13, 2002.
Rehearing Denied April 19, 2002.
*489 Carey Haughwout, Public Defender, and Marcy K. Allen, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and David M. Schultz, Assistant Attorney General, West Palm Beach, for appellee.
WARNER, J.
Appellant challenges his conviction for attempted second degree murder, raising four issues. First, he claims that the court should have granted a judgment of acquittal because his claim of self-defense was unrebutted. Second, he contends that the jury instructions on his defenses were misleading and constituted fundamental error. Third, he argues that the court erroneously admitted a knife found in his van that was not definitively identified as the weapon used in the assault. Finally, he argues that the court erred in admitting impeachment evidence that was used substantively in the prosecutor's closing argument. We find no reversible error in any of these issues and affirm.
The charges against appellant arose when the victims, Verret and Pescherine, arrived at appellant's home to retrieve Verret's guitar. Appellant had borrowed the guitar some months before. Verret had demanded its return on several occasions, but appellant kept putting him off. In fact, appellant had sold the guitar. When Verret and Pescherine arrived at the home, appellant told his wife, Anna, to tell whoever was at the door that he was not at home. Appellant then locked himself in the music room, which was in the *490 back of the house. Anna told Verret and Pescherine that appellant was at work. Although the testimony conflicted as to whether the victims were invited into the home, they both testified that they were invited in by Anna.
Verret explained that he was there to retrieve his guitar and asked to look around for it. Anna replied that it was most likely in the locked music room. From inside the music room, appellant could hear Verret become loud and upset. Pescherine asked Anna for a pen or nail to open the door, but she did not have one. Anna testified that Pescherine then used several different objects to get the music room door open, including scissors, but the victims testified that Pescherine only jiggled the door knob. While they were working on the door, Anna told them several times to stop and wait until appellant got home. Verret admitted that she could have said that; however, Pescherine testified that he never heard Anna ask them to leave.
The evidence was disputed as to what happened next. According to the state's case, as Pescherine was jiggling the door, it flew open and appellant charged out of the room with a knife, stabbing Pescherine in the neck and chest. Pescherine backed away from appellant toward the living room, where Verret came to his aid. Appellant then began stabbing Verret, too. Appellant continued to stab at both victims as they backed away and out of the house, where they collapsed on the front lawn. According to Pescherine, when they were lying on the ground, appellant said, "[t]hat'll teach you [expletive deleted] to mess with me. You got what you deserve." Each victim received multiple stab wounds. Pescherine received a wound which cut his artery, nearly causing his death and leaving one arm paralyzed.
Appellant's story varied significantly from the account of the victims. Upon hearing the commotion outside of the music room, appellant got a knife ready to use if the door was opened. Appellant claimed Pescherine opened the door and lunged at him with the scissors. Only after he pushed Pescherine away did appellant grab his knife. He forced Pescherine into the living room, but at that point he said that he had not stabbed anyone. Verret then charged appellant, and a struggle ensued. It was during the struggle with both victims that they received their stab wounds.
After the victims collapsed on the lawn, Anna called the police, reporting that appellant had just stabbed two of his friends. Appellant fled the scene. When he was finally apprehended three weeks later, the officers found a knife in his van approximately fifteen inches in length. Appellant described the knife he had in the music room as being ten inches in length, with a four to six inch blade. The victims described the knife as having a long, steel blade, and Verret said it was about a foot long. The sheath for the knife found in the van was not the same sheath as was found in the music room, but there is nothing in the record regarding the size of either sheath. The detective testified that Verret also described a point on the handle of the knife appellant used to stab him. The knife in the van also had a point on the handle. No testing was done on the knife, and the detective could not say that the knife in the van was the weapon used in the attack. No other knife was found at the scene similar to the weapon used by appellant in the attack.
At trial, appellant claimed self-defense and defense of burglary. He testified that he knew the victims were members of motorcycle gangs and that Verret had a violent nature. Therefore, when he heard *491 Verret outside the music room speaking belligerently with his wife, he was afraid for the both of them. The trial court denied a motion for judgment of acquittal, and the jury found appellant guilty of two counts of attempted second degree murder.
Appellant first argues that because he did not invite the victims into his home, he was under the reasonable belief that they were engaged in the commission of a burglary in his dwelling, justifying his use of deadly force against them. He relies on both section 782.02, Florida Statutes (1997), and the "castle doctrine." Section 782.02 provides "[t]he use of deadly force is justifiable when a person is resisting any attempt to murder such person or to commit any felony upon him or her or upon or in any dwelling house in which such person shall be."
Similarly, the "castle doctrine" states:
[A] person's dwelling house is a castle of defense for himself and his family, and an assault on it with intent to injure him or any lawful inmate of it may justify the use of force as protection, and even deadly force if there exist reasonable and factual grounds to believe that unless so used, a felony would be committed.
Falco v. State, 407 So.2d 203, 208 (Fla. 1981) (citations omitted). However, "[a] homeowner is not entitled to use deadly force to protect his person or dwelling in all instances. A homeowner may use deadly force to protect himself or his dwelling only if there exists a reasonable belief that such force is necessary." Butler v. State, 493 So.2d 451, 453 (Fla.1986) (emphasis added).
The question of self-defense is one of fact, and is one for the jury to decide where the facts are disputed. See Scholl v. State, 94 Fla. 1138, 115 So. 43, 44 (1927); Reimel v. State, 532 So.2d 16, 18 (Fla. 5th DCA 1988); Payton v. State, 200 So.2d 255, 255 (Fla. 3d DCA 1967). In discussing the question of the reasonableness of the force used, the court in Reimel stated:
A jury question is presented when the evidence is reasonably susceptible of two views, either that the defendant's action in shooting was justifiable self-defense or that such action evinced a depraved mind without proper regard for the life of the victim. The defendant is mistaken that the issue is whether he believed that he was in danger. The law does not ascribe a subjective standard as to a defendant's state of mind, but concerns a reasonably prudent person's state of mind.
532 So.2d at 18 (citations omitted). In this case, the evidence is susceptible to two different views regarding the use of force. Appellant's position is that he feared for his wife when he heard the victims' belligerent tone of voice and their attempts to enter the music room. On the other hand, if the version of the victims is believed, while they were trying to enter the music room, they were unarmed and never threatened harm to anyone. They did not know appellant was in the music room and were surprised when he burst out brandishing a knife and stabbing the victims as they retreated. The duration of the struggle, the number of stab wounds on both victims, and appellant's leaving the scene of the incident after telling the victims they got what they deserved, all point to the work of a depraved mind rather than an act done out of a reasonable belief that it was necessary to prevent further harm. On this record, the issue of appellant's reasonable belief as to the necessity of the use of deadly force was one for the jury.
*492 We do not overlook the fact that the victims' conduct did not constitute the commission of a burglary. The victims, one of whom was a friend of appellant and his wife, were invited into the home by appellant's wife. Any intent to commit a crime, e.g., criminal mischief by breaking the lock on the music room, was formed after their entry and therefore could not be the basis of a burglary charge. See Delgado v. State, 776 So.2d 233, 240 (Fla. 2000). If the victims were not attempting to commit a felony while in the home, then the statutory justifiable use of force would not apply.
Appellant next argues it was fundamental error for the court to give the standard jury instructions on the use of deadly force. He complains that the instruction first informs the jury that the defendant was required to retreat and then instructs on the privilege of non-retreat in the home. The instruction given was as follows:
The fact that the defendant was wrongfully attacked cannot justify his use of force likely to cause death or great bodily harm if by retreating he could have avoided the need to use force. However, if the defendant was placed in a position of imminent danger of death or great bodily harm and it would have increased his own danger to retreat then his use of force likely to cause death or great bodily harm was justifiable.
If the defendant was attacked in his own home or on his own premises, he had no duty to retreat and had the lawful right to stand his ground and meet force with force, even to the extent of using force likely to cause death or great bodily harm, if it was necessary to prevent death or great bodily harm, to himself or another of the commission of a forcible felony.
Wilson v. State, 707 So.2d 1200 (Fla. 4th DCA 1998), is on point. In Wilson, the court included both the duty to retreat and the privilege of non-retreat in the justifiable use of deadly force instruction. We held the instruction was not ambiguous or misleading where it was undisputed that the events all occurred in the defendant's home and the jury could not reasonably have been misled into thinking that further retreat in the home was necessary. See id. at 1201.
While appellant suggests that Shannon v. State, 463 So.2d 589 (Fla. 4th DCA 1985), conflicts with Wilson, we disagree. Shannon involved an instruction on battery on a police officer. The defendant objected to an instruction which stated that "a person is never justified in the use of any force to resist an arrest." He requested a special instruction which stated that a defendant "could use non-deadly force to resist an arrest if the arresting officer used unlawful or excessive force." The court gave both instructions, resulting in "diametrically opposed" instructions. Id. at 590.
Shannon and Wilson do not conflict. The instructions in Shannon were misleading and contradictory because they included a statement totally prohibiting the use of any force against an officer in any situation and then contradicting it with a statement that force is permissible if an officer used unlawful force to arrest. On the other hand, in Wilson, as here, the instructions to the jurors on both the duty to retreat and the privilege of non-retreat were not contradictory because the instructions never informed the jury that a defendant must retreat in all circumstances. Rather, the instructions state the general rule and then explain the privilege of non-retreat. There is no conflict in these cases.
While not objected to at trial, appellant also argues that the court committed *493 fundamental error by including the language "meet force with force" in the instruction concerning defense of the home. An unobjected to instruction may be regarded as fundamental error when a misleading or inaccurate jury instruction effectively negates a defendant's sole defense. See Davis v. State, 804 So.2d 400, 404 (Fla. 4th DCA 2001). Appellant relies on Quaggin v. State, 752 So.2d 19, 23 (Fla. 5th DCA 2000), where the court held that including the "meet force with force" language was misleading in a defense of burglary case because a homeowner could use deadly force to prevent the commission of a burglary before force is used by the burglar. However, the court found that the instruction was misleading under the facts of that case. Quaggin, the homeowner, killed a boy who had entered his home unannounced. Quaggin pulled a gun and told the burglar to stop, but the boy kept moving toward him and he shot the boy. Because the burglar had not used "force" either in entering or upon Quaggin at the point he was shot, the instruction could have misled the jury and negated his only defense.
Here, in contrast, the "meet force with force" instruction was not misleading under the facts of this case. Appellant's defense was based upon his belief that the victims were armed. He testified that he did not stab either of the victims until Pescherine lunged at him with a pair of scissors. Therefore, the victims had used force, and the "meet force with force" instruction did not negate appellant's defense. Thus, it was not fundamental error.
As his third point, appellant contends that the court erred in admitting the knife found in his van three weeks after the incident because it was not the same knife used in the incident. At trial, the detective who retrieved the knife testified that it was similar to the knife described by Verret, but he could not state that it was the knife appellant used in the incident. No tests were run on the knife to ascertain whether any blood evidence or wound puncture analysis could tie the knife to the crime. The knife found in the van was fifteen inches long with a pointed handle. Verret described the knife appellant used during the attack as approximately twelve inches in length with a long blade. Appellant stated that the knife he used was only ten inches long with a four to six inch blade.
A trial court's ruling on the admissibility of evidence will not be disturbed absent an abuse of discretion. See Blanco v. State, 452 So.2d 520, 523 (Fla.1984). Evidence is admissible if it tends "to prove or disprove a material fact" at issue, § 90.401, Fla. Stat. (1999), unless its probative value is outweighed by its prejudicial effect. See § 90.403, Fla. Stat. (1999). The state sought to admit the knife found in the van because it could have caused the victims' wounds and was found with appellant.
This case is similar to Council v. State, 691 So.2d 1192 (Fla. 4th DCA 1997). A gun was used in a robbery, and three weeks later when officers arrested the defendant, they found a gun under the mattress in his room. This gun was similar to the descriptions given by several witnesses to the robbery. There were, however, discrepancies in some of the descriptions. The investigating detective did not testify that it was the weapon used in the robbery. We held that the court did not err in admitting the gun, as the common characteristics of the gun were sufficient to establish the gun's probative value. See id. at 1195. "It was for the jury to consider the physical evidence, in relation to the testimony, and to determine what weight to give such evidence." Id. at 1194.
*494 In this case, there were two descriptions of the knife, one by Verret and one by appellant. The knife found in the van was similar to the description by Verret, being approximately the same length and having a pointed handle. This was sufficient to establish its probative value. Appellant also argues that, even if probative, its prejudicial effect outweighed its probative value. We disagree. While appellant claims that the jury could have considered him a dangerous man, carrying a knife in his vehicle, the knife was never made a feature of the trial, and the prosecutor did not refer to it in his closing argument. See id. at 1196. The trial court did not abuse its discretion by admitting the knife.
Appellant's final argument is that the trial court erred in permitting Detective Walker to testify to Anna Dias' prior inconsistent statements to impeach her trial testimony. Further, in admitting one statement that had not been revealed to appellant prior to trial, a discovery violation occurred, and the trial court failed to conduct a proper Richardson hearing.
At trial, Anna testified that she did not invite the victims into the home. On cross-examination, she was confronted with her statement at appellant's bond hearing that she had invited them into the home. She also testified that Pescherine had "popped" open the music room door, and appellant came out. A struggle ensued with Pescherine which moved into the living room, where Verret jumped on appellant. She did not see appellant stab anyone until Verret joined the fray. Finally, she testified that appellant was injured during the fracas, but the prosecutor impeached her with her taped statement to the police on the day of the incident.
Detective Walker, who had spoken with Anna on the date of the incident, testified over a hearsay objection that she had invited the victims into the home on that date. He was also asked,
Q. Did she tell you who was the initial aggressor?
A. Yes.
Q. What did she say?
A. Her Husband.
Q. How did she say that?
A. That he came out of the
The defense attorney, thereupon, interposed an objection on the ground that this was a surprise statement to the defense, as there was nothing in any of Anna's statements that indicated appellant was the aggressor. However, he also said "[i]f it is from his memory, there is no problem." While the prosecutor responded that the information was submitted for impeachment purposes, the defense objection was failure to disclose, not improper impeachment.
The court questioned, and the defense agreed, that all of the witness' statements were furnished to the defense. In his deposition, the detective made the statement that Anna mentioned "how Bob sprang from the door at Pescherine." Based upon its review of the deposition, the court determined that there had been no discovery violation.
The defense later cross-examined Walker and got him to admit that the statement "Bob sprang from the door" was in none of his reports. He admitted that it would have been an important fact to put in the reports had the statement actually been made. Given this impeachment of Walker's direct testimony on the statement, the prosecutor did not refer to it in closing argument.
Appellant's only objection to Walker's statement that Anna had invited the victims into the house was that it was hearsay. Here, the testimony was being offered to impeach Anna's testimony. See *495 § 90.608(1), Fla. Stat. (1999). A statement inadmissible as hearsay can still be admissible for another reason, such as for impeachment purposes. See Breedlove v. State, 413 So.2d 1, 6 (Fla.1982). However, appellant asserts that the prosecutor improperly used Anna's inconsistent statement as substantive evidence in his closing argument. While it is close as to whether the prosecutor was asking the jury to consider her previous statement as substantive evidence, no objection was made to this argument. Therefore, it is not preserved. Nevertheless, it was harmless because the prosecutor also referred to Anna's statement at the bond hearing in which she testified that she had invited the victims into the home. This statement was not hearsay because it was given under oath at the bond hearing. See § 90.801(2)(a), Fla. Stat. (1999). Therefore, it could be used as substantive evidence.
Finally, we reject appellant's claim that the state committed a discovery violation by failing to notify him of Detective Walker's statement that Anna told him that her husband was the aggressor. At best, this appears to be a change of testimony rather than failure to provide discovery. See Bush v. State, 461 So.2d 936, 938 (Fla.1984). Detective Walker's deposition did refer to a statement by Anna that "Bob sprang through the door" at Pescherine. However, she did not state that he was the aggressor, which appears to be Walker's conclusion. After reading the statement in the deposition, the court concluded there was no discovery violation. We hold that the court did not abuse its discretion. See Mascolo v. State, 774 So.2d 827, 829 (Fla. 4th DCA 2000). Furthermore, appellant's counsel was able to discredit Detective Walker by securing his admission that the statement was in none of the reports and, had it been made, it would have been an important fact to put in the reports. In fact, he admitted that Anna told him that the door had been pried open by Pescherine.
Having found no reversible error, we affirm appellant's judgment and sentence.
FARMER, J., and ROBY, WILLIAM L., Associate Judge, concur.