901 So.2d 409 (2005)
Clyde CHAVERS, Appellant,
v.
STATE of Florida, Appellee.
No. 1D04-0986.
District Court of Appeal of Florida, First District.
May 18, 2005.
*410 Nancy A. Daniels, Public Defender, and M. Gene Stephens, Assistant Public Defender, Tallahassee, for Appellant.
Charlie Crist, Attorney General, and Thomas D. Winokur, Assistant Attorney General, Tallahassee, for Appellee.
ERVIN, J.
In his appeal from a conviction for discharge of a firearm into an occupied vehicle, Clyde Chavers asserts the trial court erred in refusing to instruct the jury on the justifiable use of force in self-defense. We agree and reverse and remand with directions that a new trial be conducted.
We review a trial court's decision on the giving or withholding of a proposed jury instruction under the abuse of discretion standard. See Langston v. State, 789 So.2d 1024, 1026 (Fla. 1st DCA 2001). However, "that discretion is fairly narrow because appellant is entitled, upon request and by law, to have the jury instructed on his theory of defense if any evidence supports that theory, so long as the theory is valid under Florida law." See Goode v. State, 856 So.2d 1101, 1104 (Fla. 1st DCA 2003).
In deciding whether to give a requested charge, a "`trial judge may not weigh the evidence before him in determining whether the instruction is appropriate; it is enough if the defense is suggested by the evidence presented.'" See Thomas v. State, 547 So.2d 989, 990 (Fla. 1st DCA 1989) (quoting Terwilliger v. State, 535 So.2d 346, 347 (Fla. 1st DCA 1988)). Accord Goode, 856 So.2d at 1104; Pope v. State, 458 So.2d 327, 329 (Fla. 1st DCA 1984) ("The evidence need not be `convincing to the trial court,' before the instruction can be submitted to the jury,... as it suffices that the defense is `suggested' by the testimony."); Parrish v. State, 113 So.2d 860, 863 (Fla. 2d DCA 1959) (no matter how improbable defendant's testimony was, if not demonstrably *411 false, the trial court errs in refusing to give a self-defense instruction).
In our judgment, the lower court impermissibly weighed the evidence which otherwise suggested the appropriateness of the self-defense instruction. In reaching its decision, the trial court appears to have been primarily influenced by this court's decision in Smiley v. State, 395 So.2d 235, 236 (Fla. 1st DCA 1981), wherein we observed:
When considering the matter of threats in relation to proof of self-defense, there must be some evidence of an overt act expressing an intention to immediately execute the threats so that the person threatened has a reasonable belief that he will lose his life or suffer serious bodily harm if he does not immediately take the life of his adversary.
The lower court was of the opinion that because there was no threat to appellant of any overt act which would reasonably cause him to believe he would be exposed to the danger of great bodily harm if he did not act as he did, he was therefore not justified in using deadly force. The lower court misapplied the above rule to facts that were altogether dissimilar from those in Smiley. There the circumstances reveal that only two persons witnessed the shooting: the victim and the defendant. The victim testified he was asleep when the defendant shot him four times, and there was no evidence the shooting occurred in any other manner.
In contrast, the record in the case at bar discloses that at approximately 10:30 p.m., three vehicles pulled in front of appellant's residence, then the occupants left, leaving behind a truck. Some time later they returned, and appellant, alone in the house, confronted the victim who had gotten into the truck and was attempting to drive it off, telling him he could not leave until the owner of the property returned. When the victim began to drive away, appellant emptied his revolver into the truck's front tire.
Appellant, who suffered from a nervous condition, testified that he was very frightened by the flashing headlights, the voices of persons whom he did not recognize, then cars driving away, only to return a half hour later. Appellant related that upon their return, he was unable to ascertain how many people were in the cars parked in front of and behind the truck, or if any persons other than the driver had exited the other vehicles. Just before he fired the shots, appellant saw a shadow, which he surmised to be someone moving along the fence line toward him. Thus, the evidence suggests that because of the unexpected arrival of three vehicles late at night in a darkened area in front of appellant's residence, and the movement of unknown persons, appellant became fearful for his own safety, and was convinced that the possible theft of a truck was about to occur. This combined activity, occurring immediately before the discharge of the firearm, could be viewed by a jury as reasonably suggestive of a threat to a person in appellant's position. As a result, because there was some evidence supporting the theory of self-defense, the lower court erred in refusing to give the requested instruction.
REVERSED and REMANDED.
KAHN and BENTON, JJ., concur.