DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**MICHAEL RADLER,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D18-1737

[February 12, 2020]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Dennis D. Bailey, Judge; L.T. Case No. 15-13072CF10A.

Carey Haughwout, Public Defender, and Logan T. Mohs, Assistant Public Defender, West Palm Beach, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Anesha Worthy, Assistant Attorney General, West Palm Beach, for appellee.

CONNER, J.

Michael Joseph Radler ("Defendant") appeals his conviction and sentence for misdemeanor battery after a jury trial. We affirm the trial court's denial of a request for a jury instruction on the justifiable use of deadly force without further comment. However, we find the trial court erred by refusing to: (1) instruct the jury on the justifiable use of non-deadly force; and (2) permit a proffer of evidence. Accordingly, we reverse and remand for a new trial.

*Background*

Charged with aggravated battery, Defendant proceeded to a jury trial. The only eyewitnesses to the events who testified at trial were the victim ("Victim") and Defendant. Because the two issues we address revolve around Defendant's version of the events, we begin with a summary of his version followed by Victim's version.

Defendant went to his girlfriend's hotel room where he saw her drinking with a female friend, Victim's sister. The two females were drunkenly

shaving a dog to the point of hurting the dog. When Defendant tried to intervene, an argument ensued between Defendant and Victim's sister. The sister said she was going to call her brother to come to the room, whereupon Defendant said he was leaving to avoid any conflict. As Defendant left the room, he saw the sister using her cellphone.

As Defendant was walking away from the hotel room through a parking lot, he saw Victim approaching him. He had never seen Victim before, but assumed it was the sister's brother. Defendant shouted at Victim to stay away and mind his own business. Victim continued to proceed towards Defendant, despite his repeated protests. Defendant described Victim as a "big guy," standing five feet, eleven inches tall, and weighing 270 pounds. Defendant was particularly concerned about Victim's silence as he approached. When Victim was an arm's length away from him, Defendant was cornered between Victim and a fence. Defendant continued to insist that Victim leave him alone.

When Victim finally stopped, he "took a stance like he was squaring off." Defendant demonstrated the stance to the jury, which was described as a "squat stance." Defendant testified that as he was assuming his "squat stance," Victim "went to go hike up his shorts that he was wearing. And when his hands went behind his back, I don't know if he's reaching for a weapon. I don't know . . . if he has a knife." Out of fear of what Victim might do, Defendant said he gave into the "[h]uman instinct to protect myself" and punched Victim in the mouth one time.

On cross-examination, Defendant admitted that Victim never said anything to him, did not raise his hand or arm as if to strike him, and Defendant never saw a weapon.

Victim gave a very different account of the events. He was sitting outside at the hotel when he saw his sister frantically waving at him to come over to her. He next saw Defendant coming towards him, taking off his jewelry as he was walking. This made him think Defendant was coming to hit him. As Defendant approached, the two greeted each other. At that moment, Defendant's girlfriend ran up to Defendant, told him to stop, and slapped him. Wanting to avoid any involvement in the altercation, Victim turned to leave but, as he turned away, Defendant punched him in the side of the face. He tried to get away, but Defendant punched him twice more in the back of the head. He had never spoken to Defendant before this incident, did not hit him, did not threaten him, and did not have a weapon.

*Additional Background*

After Defendant explained what he saw in the hotel room, his attorney asked him what his response was to that scene. At that point, the State objected on relevance grounds, and the trial court sustained the objection. Defense counsel requested to proffer what Defendant would testify. The court granted the request, and the jury left the courtroom. Defendant answered the question and stated he was disturbed by the scene, saw empty bottles of alcohol, and asked Victim's sister to leave. Based on this, the court determined that nothing Defendant proffered "ha[d] any bearing on any issue in this case." Defense counsel attempted to argue that it was inextricably intertwined because it went to "why he left the room and was headed in that direction [referring to the parking lot]." The court rejected the argument, maintaining it was irrelevant to the issue at trial. Defense counsel objected, arguing the proffer supported the defense's self-defense theory.

After the jury returned to the courtroom, defense counsel resumed questioning, during which the following exchange occurred:

> [DEFENSE COUNSEL]: Okay. So —— And is it —— is it —— Did you leave your hotel room after you seen what you saw?
>
> [DEFENDANT]: It was because [Victim's sister] said that she was going to call her brother ——
>
> [DEFENSE COUNSEL]: Okay.
>
> [DEFENDANT]: —— to come to the hotel room.
>
> [DEFENSE COUNSEL]: Okay.
>
> [DEFENDANT]: And I said I didn't want any conflict. I said I'll leave.
>
> [DEFENSE COUNSEL]: Okay. So —— So, what did you observe [Victim's sister] doing?
>
> [DEFENDANT]: She got on her ——
>
> [PROSECUTOR]: Judge, I'm going to ——
>
> [THE COURT]: This is inside ——

3

[PROSECUTOR]: —— object.

THE COURT: This is inside the room?

[DEFENSE COUNSEL]: Yes.

[DEFENDANT]: Yes.

THE COURT: Okay. Same ruling as before, Mr. [DEFENSE COUNSEL].

[DEFENSE COUNSEL]: Okay.

THE COURT: Next question.

[DEFENSE COUNSEL]: I — I need to make my argument. It goes into —

THE COURT: No, sir.

[DEFENSE COUNSEL]: I need to make my argument.

THE COURT: I've already ruled. I've already ruled. Next question.

[DEFENSE COUNSEL]: Well, I need to proffer.

THE COURT: No, sir.

[DEFENSE COUNSEL]: I need to proffer. I need to -

THE COURT: You just did that five minutes ago.

[DEFENSE COUNSEL]: I need to proffer, Judge ——

THE COURT: Okay. Next question ——

[DEFENSE COUNSEL]: —— in order to preserve the record

THE COURT: —— Mr. [DEFENSE COUNSEL].

[DEFENSE COUNSEL]: Okay.

[DEFENSE COUNSEL] [continuing with examination]:  So, you walk outside?

[DEFENDANT]: Correct

. . . .

[DEFENSE COUNSEL]:  All right.  So - and do you know who she was on the phone with?

[DEFENDANT]: She said that she was calling her brother.

[DEFENSE COUNSEL]:  Okay.  And  her  brother  would  be [Victim], right?

[DEFENDANT]: Correct

The remainder of Defendant's testimony dealt with the subsequent battery after he walked out of the hotel room.

At the charge conference, defense counsel requested a jury instruction on the justifiable use of both deadly and non-deadly force.  The trial court denied both requests.  Relying on *Thomas v. State*, 118 So. 22 (Fla. 1928), the trial court reasoned Defendant's evidence merely supported his subjective state of mind and did not support any evidence that "a reasonably, cautious, and prudent person . . . under the same circumstances would have believed that danger could be avoided only through the use of that force."

The jury rendered a verdict finding Defendant guilty of the lesser included offense of battery.  After being adjudicated guilty and sentenced, Defendant gave notice of appeal.

*Appellate Analysis*

*Jury Instructions*

The standard of review governing a trial court's decision to give a standard jury instruction is abuse of discretion.  *Stephens v. State*, 787 So. 2d 747, 755 (Fla. 2001).  "[D]iscretion is abused only where no reasonable man would take the view adopted by the trial court." *Canakaris v. Canakaris*, 382 So. 2d 1197, 1203 (Fla. 1980) (quoting *Delno v. Mkt. St. Ry. Co.*, 124 F.2d 965, 967 (9th Cir. 1942)).  "However, the trial court's discretion in criminal cases is rather narrow because a criminal

5

defendant is entitled to have the jury instructed on his or her theory of defense, if there is any evidence to support this theory, no matter how weak or flimsy." *St. Pierre v. State*, 228 So. 3d 583, 585–86 (Fla. 4th DCA 2017) (internal citations and quotations omitted).

Defendant contends the trial court erred by refusing to instruct the jury on the justifiable use of non-deadly force, contending his testimony met the "*any* evidence" standard for giving the self-defense instruction. We agree.

"Failure to give a standard jury instruction is reversible error when the omitted standard jury instruction goes to the heart of the defendant's case." *Hosnedl v. State*, 126 So. 3d 400, 403 (Fla. 4th DCA 2013) (quoting *Arboleda v. State*, 645 So. 2d 48, 50 (Fla. 3d DCA 1994)). Although we could find no case law that specifically addresses the standard to be applied in assessing state of mind in the context of non-deadly force, we agree with the State that, similar to the context of deadly force, "[t]he law does not ascribe a subjective standard as to a defendant's state of mind, but concerns a reasonably prudent person's state of mind." *Chaffin v. State*, 121 So. 3d 608, 612 (Fla. 4th DCA 2013) (quoting *Reimel v. State*, 532 So. 2d 16, 18 (Fla. 5th DCA 1988)). We also agree with Defendant that "[t]he question of self-defense is one of fact, and is one for the jury to decide where the facts are disputed." *Id.* (alteration in original) (quoting *Dias v. State*, 812 So. 2d 487, 491 (Fla. 4th DCA 2002)). Finally, we note that "[t]he trial court should not weigh the evidence for the purpose of determining whether the instruction is appropriate." *Calkins v. State*, 170 So. 3d 888, 890 (Fla. 4th DCA 2015) (quoting *Charles v. State*, 945 So. 2d 579, 582 (Fla. 4th DCA 2006)).

"Non-deadly force may be used when, and to the extent, that a person reasonably believes that the use of non-deadly force is necessary to defend oneself against the imminent use of unlawful force." *Hosnedl*, 126 So. 3d at 403 (citing *Michel v. State*, 989 So. 2d 679, 681 (Fla. 4th DCA 2008)).

Defendant relies heavily on *Wagers v. State*, 199 So. 3d 1116 (Fla. 5th DCA 2016), as support for his position. There, the only evidence supporting a self-defense theory was the defendant's girlfriend's testimony that the victim approached the defendant in "an aggressive way." *Id.* at 1117. The trial court denied the request for a non-deadly force instruction. *Id.* Even though it observed the evidence was "indeed sparse," the Fifth District reversed. Although the State attempts to distinguish *Wagers* by pointing out that, here, Victim made no threatening statements and, instead, was totally silent while approaching Defendant, we are not

persuaded that *Wagers* is not instructive. Silent aggressive behavior can be threatening.

We also find *Chavers v. State*, 901 So. 2d 409 (Fla. 1st DCA 2005), to be instructive. The defendant in that case was charged with discharge of a firearm into an occupied vehicle. *Id.* at 410. The trial court refused to give a justifiable use of force in self-defense instruction because there was no evidence of any overt act which would reasonably cause the defendant to believe he would be exposed to great bodily harm. *Id.* at 411. The evidence showed that at approximately 10:30 p.m., three vehicles pulled in front of the defendant's residence but shortly thereafter the occupants of the vehicles left, leaving behind a truck. *Id.* A half hour later, the vehicles showed up again, and the defendant confronted the victim as he was attempting to leave in the truck that was previously left behind. *Id.* "When the victim began to drive away, [the defendant] emptied his revolver into the truck's front tire." *Id.*

The First District concluded that

> the evidence suggests that because of the unexpected arrival of three vehicles late at night in a darkened area in front of [the defendant's] residence, and the movement of unknown persons, [the defendant] became fearful for his own safety, and was convinced that the possible theft of a truck was about to occur. *This combined activity, occurring immediately before the discharge of the firearm, could be viewed by a jury as reasonably suggestive of a threat to a person in [the defendant's] position.*

*Id.* (emphasis added).

Although the theory of justifiable use of force to protect property was the defense in *Chavers* and the facts are significantly different from the instant case, we are satisfied that analogous to the situation the defendant in *Chavers* faced, it is the *combination of activity* leading up to and occurring immediately before Defendant punched Victim that presented sufficient evidence to reasonably suggest a threat to a person in Defendant's position that non-deadly force was needed for self-defense. It was for the jury to decide if Defendant's fear of harm was reasonable.

We agree with Defendant that the reliance by the State and the trial court on *Thomas* was misplaced. First, *Thomas* contains no discussion of jury instructions given. 118 So. 2d at 23-24. Second, the facts are not analogous to this case. In *Thomas*, although an altercation between the

7

defendant and the victim occurred the day before the victim was shot and killed, there was no indication of aggressive actions by the victim at the time of the shooting, except for dropping his hand to the seat of the car in which he was sitting. *Id.* It is the immediacy of Victim's arguably aggressive actions, as compared to the significant delay of time between the victim's actions in *Thomas*, that makes *Chavers* more instructive.

Thus, we reverse the denial of the request for an instruction on justifiable use of non-deadly force.

*Denial of Proffer*

"The admission or exclusion of evidence is generally governed by the abuse of discretion standard." *Willson v. Big Lake Partners, LLC*, 211 So. 3d 360, 364 (Fla. 4th DCA 2017). Regarding proffers of evidence, we have said:

> The primary purpose of a proffer is to include the proposed evidence in the record so that the appellate court can determine whether the trial court's ruling was correct. A trial court commits error if it denies a request to proffer testimony which is reasonably related to the issues at trial. This is so because refusing to permit the proffer precludes full and effective appellate review.
> . . . .
> [R]efusal to permit a proffer is subject to a harmless error analysis. The burden, however, is on the state to establish beyond a reasonable doubt that the error complained of did not contribute to the verdict. Unless there is record evidence or argument of defense counsel revealing what the proposed proffer would have included, it is difficult, if not impossible, to say that the error was harmless.

*Fehringer v. State*, 976 So. 2d 1218, 1220-21 (Fla. 4th DCA 2008) (internal citations omitted).

Defendant argues the trial court erred in denying his second request to proffer testimony as to what he observed as he left his girlfriend's hotel room. He contends that the denial left him with an appellate record that is speculative as to whether relevant evidence was excluded. The State argues that the question leading to the request to proffer related to what Defendant "observed" as he was leaving the room; Defendant was able to testify that he saw Victim's sister using her cellphone, so there was no need for proffer.

8

We disagree with the State's argument that the question of what Defendant "observed" as he was leaving the room was limited to visual, as opposed to auditory, observation. We also agree with Defendant that the trial court's refusal to entertain the second proffer left him with offering speculative arguments as to what he might have said in response to questioning on proffer.

We are satisfied that the trial court improperly assumed any further evidence of what Defendant saw and heard as he was leaving his girlfriend's room was irrelevant. For that reason, we disagree with the State's argument that the denial of the second proffer was harmless error. Because there is no record of the proffered evidence and defense counsel was not permitted to even explain what the proposed proffer would have included, it is impossible to say that the error was harmless.

*Conclusion*

Having determined that the trial court improperly denied the request for a jury instruction on the justifiable use of non-deadly force and the request for a proffer of evidence, we reverse and remand for a new trial.

*Reversed and remand for new trial.*

WARNER and TAYLOR, JJ., concur.

*   *   *

**Not final until disposition of timely filed motion for rehearing.**