[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-10779

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

CEDRICK DURHAM, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:22-cr-00170-TPB-MRM-1

_____

Before ROSENBAUM, BRASHER, and ABUDU, Circuit Judges.

PER CURIAM:

Cedric Durham, Jr., appeals his sentence of 48 months of imprisonment for possession of a firearm and ammunition after a felony conviction, in violation of 18 U.S.C. § 922(g)(1). Durham was involved in a shooting outside of a bowling alley in Tampa, Florida, during which he exchanged gunfire with other individuals and suffered a gunshot wound to his right leg. Based on that conduct, the district court applied a four-level guideline enhancement under U.S.S.G. § 2K2.1(b)(6)(B) for possessing a firearm in connection with another felony offense. Durham maintains that the enhancement does not apply because his conduct was justified by defense of self and others. After reviewing available surveillance footage of the incident, the district court applied the enhancement because, in its view, Durham's conduct went beyond self-defense. That finding is not clearly erroneous, so we affirm Durham's sentence.

## I.

On March 6, 2022, Durham and a group of friends, including Jamal Jackson, arrived at Pin Chasers Bowling Alley in Tampa, Florida, and began walking from the parking lot to the entrance. On the way, Durham stopped and exchanged words with members of another group who were standing in the parking lot, while Jackson attempted to pull Durham away. Durham then followed the rest of his group toward the front entrance to the bowling alley.

Surveillance footage shows that, as Durham's group approached the door, individuals in the other group fired shots toward the bowling alley's front entrance. Durham's group scattered, some running inside for shelter and others taking cover outside. Durham retreated inside the bowling alley, firing shots back toward the parking lot with the firearm he had in his possession as he entered. After passing the check-in counter inside, Durham returned to the front doors with his gun drawn and continued shooting into the parking lot, moving in and out of the front vestibule as he fired.

Police recovered more than 30 spent rounds of 9mm ammunition at the front entrance. These rounds were forensically linked to Durham's gun, which was equipped with a high-capacity magazine. Durham, Jackson, and one of their friends all sustained gunshot wounds.

## II.

Durham was charged with and pled guilty to one count of possession of a firearm and ammunition after having been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1).

Durham's presentence investigation report ("PSR") calculated a total offense level of 21, which included a four-level increase for using a firearm or ammunition "in connection with another felony offense" under U.S.S.G. § 2K2.1(b)(6)(B). According to the PSR, "[s]urveillance video recordings show that after retreating into the bowling alley, the defendant returned to the entrance several times and shot at least 32 rounds into the parking lot." That

conduct, the PSR stated, could be "considered a number of felony offenses, including Aggravated Assault with a Firearm and Shooting Into [a Building] or Throwing Deadly Missiles."

Durham objected to the § 2K2.1(b)(6) enhancement, contending that he had been the "victim of an attempted murder" and had "returned fire in an attempt to defend himself and his friends." He also filed a sentencing memorandum, arguing that he was the victim of an "unprovoked attack" and that he was justified in using deadly force under Fla. Stat. § 776.012(2). In response, the probation officer maintained that the enhancement was appropriate because surveillance video showed that "after retreating into the relative safety of the bowling alley, where the perpetrator(s) did not follow, the defendant returned to the entrance several times and shot at least 32 rounds into the parking lot" in a "reckless exchange of gunfire."

At sentencing, Durham maintained that he lacked the criminal intent necessary for aggravated assault or shooting into a building and that his conduct was justified by defense of self and others. The government responded that Durham had "already retreated" and was "no longer in danger" when he chose to reengage and "discharge[] 30 rounds."[1]

---

[1] The parties also disputed whether Durham, during the initial verbal altercation in the parking lot, lifted his shirt to display the firearm in his possession. The district court indicated that this dispute did not matter to its decision.

The district court viewed the available surveillance videos of the incident—two videos of the parking lot from different angles, and one video from inside the bowling alley looking toward the front entrance—with some explanatory comments by the parties. Durham personally stated that, after he went inside, he returned to the front vestibule and continued shooting because his girlfriend and her best friend, who was shot, were still outside. Defense counsel likewise emphasized that Durham not only was protecting himself, but also "was trying to protect against his friends being shot who were still stuck outside in the open and still being shot at."

The district court overruled Durham's objection, finding that he was "not engaging in self-defense after he came back into the bowling alley," which the court described as a "breaking point." Although it "happened very quickly," the court stated, at that point he had "stopped at being on defense and go[ne] on offense." The court applied the § 2K2.1(b)(6) enhancement and calculated a guideline range of 41 to 51 months based on a total offense level of 21 and a criminal history category of II.

Ultimately, the district court sentenced Durham to a within-guideline sentence of 48 months. The court explained that, while "there was a self-defense aspect" to Durham's conduct and he had accepted responsibility, he had "just got out of prison for a gun" conviction and was "not allowed to have a gun at all, even for self-defense." Durham appeals.

**III.**

"We review the district court's factual findings at sentencing under the clearly erroneous standard, while its application of law to those facts is subject to *de novo* review." *United States v. Jones*, 32 F.3d 1512, 1517 (11th Cir. 1994). "A factual finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Morrissette-Brown v. Mobile Infirmary Med. Ctr.*, 506 F.3d 1317, 1319 (11th Cir. 2007) (quotation marks omitted). So long as the district court's view of the evidence is "plausible in light of the record viewed in its entirety," it "cannot be clearly erroneous." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574 (1985).

In gun-possession cases, a four-level guideline enhancement applies if the defendant "used or possessed any firearm in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6)(B). The phrase "another felony offense" includes state offenses punishable by imprisonment for a term of more than one year, regardless of whether the defendant was charged with that offense. *United States v. Smith*, 480 F.3d 1277, 1280 (11th Cir. 2007); *see* U.S.S.G. § 2K2.1, cmt. n.14. The government bears the burden of establishing by a preponderance of the evidence the facts necessary to support the sentencing enhancement. *Smith*, 480 F.3d at 1280.

In Durham's view, whether the § 2K2.1(b)(6)(B) enhancement applies depends on whether he was acting in defense of self or others. Durham maintains that his actions "were reasonable and justified to protect himself and his friends who were still outside,"

and that there is "insufficient proof" that his actions exceeded the bounds of self-defense. He asserts that our review is de novo, not for clear error, because the court's findings were based on video evidence and not "the credibility of the witnesses," and because the court's ruling "involve[d] the application of the facts to the law." The government, in response, does not dispute that the enhancement would not apply if Durham had acted entirely in self-defense, but it contends that the court's contrary finding is supported by the record.

The doctrine of self-defense "is an affirmative defense that has the effect of legally excusing the defendant from an act that would otherwise be a criminal offense." *Mosansky v. State*, 33 So. 3d 756, 758 (Fla. 1st DCA 2010). "A person may use deadly force in self-defense if he or she reasonably believes such force is necessary to prevent imminent death or great bodily harm." *Rasley v. State*, 878 So. 2d 473, 476 (Fla. 1st DCA 2004); *see* Fla. Stat. § 776.032(1).[2] But a "defendant who is engaged in unlawful activity

---

[2] Section 776.032(1) states,

> A person is justified in using or threatening to use deadly force if he or she reasonably believes that using or threatening to use such force is necessary to prevent imminent death or great bodily harm to himself or herself or another or to prevent the imminent commission of a forcible felony. A person who uses or threatens to use deadly force in accordance with this subsection does not have a duty to retreat and has the right to stand his or her ground if the person using or threatening to

. . . has a duty to retreat and must use all reasonable means in his power, consistent with his own safety, before his use of deadly force will be justified." *Jimenez v. State*, 353 So. 3d 1286, 1288 (Fla. 2d DCA 2023). It is undisputed that Durham was engaged in unlawful activity—possession of a firearm as a convicted felon—and so had a duty to retreat.

Durham has not shown that the district court erred in applying the § 2K2.1(b)(6)(B) enhancement. For starters, our review of the court's finding that Durham's conduct went beyond self-defense is for clear error because, under Florida law, "[t]he question of self-defense is one of fact." *Dias v. State*, 812 So. 2d 487, 491 (Fla. Dist. Ct. App. 2002). The mere fact that the court based its finding on video evidence rather than witness credibility does not mean we may exercise de novo review. *See Anderson*, 470 U.S. at 574 (explaining that clear-error review applies "even when the district court's findings do not rest on credibility determinations, but are based instead on physical or documentary evidence or inferences from other facts"). So we may not reverse the court's findings as to self-defense so long as they were "plausible in light of the record viewed in its entirety." *Id.*

---

use the deadly force is not engaged in a criminal activity and is in a place where he or she has a right to be.

Durham agreed below that the second sentence of this paragraph—the "stand your ground" component—did not apply because he was unlawfully possessing a firearm when the events occurred.

And here, based on the entire record, we are not left with a definite and firm conviction that the district court made a mistake in finding that Durham's conduct at the bowling alley was not fully justified by self-defense. *See Morrissette-Brown*, 506 F.3d at 1319. The surveillance videos show that Durham, after firing several shots and retreating to the relative safety of the bowling alley, returned to the front entrance and reengaged in a gun fight, ultimately firing more than 30 rounds. Even assuming his initial use of deadly force was justified by self-defense, this evidence is "susceptible of the view that the defendant could have extricated himself from the situation without [further] using deadly force" by staying inside the shelter of the bowling alley, as Jackson had. *Dias*, 812 So. 2d at 491; *see also Jimenez*, 353 So. 3d at 1288. Thus, the district court reasonably determined that Durham's reengagement and continued use of deadly force was not justified.

Durham maintains that he reengaged to protect his friends who had taken cover outside. But the issue is not whether Durham personally "believed that [others] w[ere] in danger." *Reimel v. State*, 532 So. 2d 16, 18 (Fla. 5th DCA 1988). Rather, the self-defense inquiry "concerns a reasonably prudent person's state of mind." *Id.* So the court was not required to accept Durham's testimony that it was necessary for him to reengage to protect his friends outside the front entrance. Plus, both the video evidence and Durham's statements at sentencing indicate that Durham was the target, not his group as a whole. So by choosing to reengage in a gunfight at the front entrance, Durham may well have actually increased the

danger for the people outside, as well as for others who may have been in the parking lot but not involved in the shooting.

For these reasons, the district court offered a plausible view based on the evidence that Durham's reengagement and use of deadly force after reaching the relative safety of the bowling alley was not justified by the doctrine of self-defense. While the evidence may support a contrary view, that is not enough to render the court's finding clearly erroneous. *See Anderson*, 470 U.S. at 574. And Durham does not otherwise contend on appeal that the § 2K2.1(b)(6)(B) enhancement was inappropriate even if his conduct lacked justification, or that his sentence is unreasonable. Accordingly, we affirm Durham's sentence.

**AFFIRMED.**