971 So.2d 178 (2007)
Jose Jaramillo CRUZ, Appellant,
v.
STATE of Florida, Appellee.
No. 5D07-1639.
District Court of Appeal of Florida, Fifth District.
December 28, 2007.
*179 James S. Purdy, Public Defender, and David S. Morgan, Assistant Public Defender, Daytona Beach, for Defendant.
Bill McCollum, Attorney General, Tallahassee, and Anthony J. Golden, Assistant Attorney General, Daytona Beach, for Appellee.
EVANDER, J.
After a jury trial, the defendant, Jose Cruz, was convicted of two counts of aggravated battery with a deadly weapon. On appeal, he contends that the trial court erred in failing to give the jury a justifiable *180 use of non-deadly force instruction. We agree.
On November 18, 2004, the defendant struck Austin McGreal and Elmer Chambers with his van in the parking lot of the Shady Road Lounge located in Ocala, Florida. McGreal and Chambers provided fairly consistent testimony. McGreal testified that earlier in the evening, Chambers and the defendant had a brief argument inside the Shady Road Lounge. Shortly thereafter, McGreal witnessed a physical altercation between the defendant and an unidentified individual. McGreal advised the lounge owner of the physical altercation and the lounge owner instructed the defendant and the unidentified individual to leave. Both men complied with the lounge owner's directive.
Later that evening, McGreal saw Chambers standing in the parking lot in front of the lounge. He then saw the defendant in his van arguing with another individual. Chambers had his back to the defendant's van and told McGreal "that guy's back again." McGreal then heard the sound of gravel and spinning wheels and assumed the defendant was leaving. Instead, McGreal witnessed the defendant run Chambers over, dragging him under the van. McGreal tried to help Chambers and was also hit by the defendant's van. The defendant then struck Chambers a second time with his van. McGreal suffered significant injuries to his wrist, shoulder, and knee.
Chambers testified that earlier in the evening, he had an argument with the defendant because the defendant was walking in front of dart players instead of walking around them. Chambers also heard the lounge owner tell the defendant and the unidentified individual to leave the premises after a physical scuffle between the two. Shortly thereafter, Chambers spotted the defendant's van parked across the street. Chambers notified the lounge owner and the two went outside. The defendant was standing in the Shady Road Lounge's parking lot but returned to his van when he saw Chambers and the lounge owner. There was no confrontation or physical altercation.
Approximately one-half hour later, Chambers saw the defendant's van parked in the lounge's parking lot. Chambers heard hollering and told McGreal that "it looks like the same van that was here earlier that we told to leave." While standing in the parking lot, Chambers was struck by the defendant's van. When Chambers tried to stand up, the defendant ran over Chambers' foot. Chambers' foot, shoulder and knee were injured. The knee injury required surgery.
The lounge owner, Gary Harter, testified that Chambers and the defendant had briefly argued because the defendant kept walking in front of dart players. He further stated that he told the defendant to leave the lounge after the defendant was involved in a wrestling match with another individual. According to Harter, the defendant drove away but later returned and was watching the bar from across the street. Several minutes later, the defendant was in his van in the lounge's parking lot. Harter was inside when he heard the "commotion" in the parking lot. He went outside and saw Chambers and McGreal on the ground. The defendant floored his van and ran over Chambers and McGreal again.
The defendant was stopped later that evening, approximately fifteen to twenty miles from the Shady Road Lounge, because he was driving erratically. The deputy who stopped the defendant testified that the defendant smelled of alcohol, had watery eyes, and was bleeding in the upper shoulder and arm area. It appeared that the defendant had been stabbed three *181 times. There was blood on the interior of the van. The blood was located in and around the driver's seat, including on the interior of the driver's door. The defendant told the deputy that he had been involved in a fight in a bar. The defendant was transported by ambulance to the hospital. A paramedic's testimony confirmed that the defendant had several stab wounds.
At the hospital, the defendant was interviewed by Investigator John Tilley. Tilley testified that the defendant stated that he had been involved in a physical altercation with two males. The defendant told Tilley that one man was choking him and the other one stabbed him.[1] The defendant further told Tilley that he "was trying to get away, and they were hitting while he was trying to get away." The defendant had not called the police to report that he had been attacked. Tilley further testified that the defendant was intoxicated at the time of the interview.
Significantly, there was evidence contradicting McGreal's and Chambers' testimony that Chambers had simply been standing in the parking lot when he was unexpectedly struck by the defendant's van. A lounge patron, Daniel Vanorden, testified that he had seen McGreal and at least one other individual standing next to the defendant's van by the driver's window. It appeared that there was an argument. Another lounge patron, Katherine Gamet, testified that she had seen Chambers approach the driver's side of the van a few minutes before the incident.
Furthermore, Tilley had taken a statement from the lounge owner, Gary Harter, on the evening in question. Harter told Tilley that Chambers and McGreal had gone to the parking lot to talk to the defendant. (At trial, Harter admitted to making such statement to Tilley, but stated it had just been an assumption on his part.) Another deputy testified that on the evening in question, McGreal's wife told him that Chambers and McGreal had walked over to the defendant's van to tell the defendant to leave the parking lot. (At trial, McGreal's wife denied having made that statement.)
The defendant did not testify.
During the charge conference, defense counsel specifically requested the instruction on justifiable use of non-deadly force. The trial judge denied the request, stating:
I'm not giving it. We can give justifiable use of deadly force or you can have justifiable use of non-deadly force. I don't see the necessity of giving both. To me it's either one or the other. And my intention is to give justifiable use of deadly force.
Defense counsel stated that if the trial court would not give both instructions, he would request the instruction on justifiable use of deadly force. However, defense counsel maintained his objection to the trial court's refusal to give both instructions. The trial court gave only the instruction on justifiable use of deadly force. In closing argument, defense counsel argued that the evidence supported a finding of self-defense.
Generally, a trial court's decision to give or withhold a proposed jury instruction is reviewed for an abuse of discretion. However, in a criminal proceeding, the discretion of the trial court is rather narrow because a criminal defendant is entitled to have the jury instructed on his or her theory of defense if there is any evidence to support the theory and the theory is recognized as valid under the law of the state. Worley v. State, 848 So.2d 491 (Fla. *182 5th DCA 2003). Here, as recognized by the trial court, there was evidence to support the defendant's self-defense theory. However, the trial judge refused to give the instruction on justifiable use of non-deadly force because he believed the use of a motor vehicle to strike an individual was, as a matter of law, the use of deadly force:
I believe the use of a motor vehicle, if a jury believes they were, in fact, run down, that that is force likely to cause death or great bodily injury.
Under Florida law, a person is justified in using deadly force in self-defense only when the person reasonably believes that such force is necessary to prevent one's imminent death or great bodily harm or to prevent the imminent commission of a forcible felony. Non-deadly force may be used when and to the extent that a person reasonably believes that the use of force is necessary to defend one's self or another against the imminent use of unlawful force. § 776.012, Fla. Stat. (2004); see also DeLuge v. State, 710 So.2d 83, 84 (Fla. 5th DCA 1998). "Deadly force" is defined by statute as force likely to cause death or great bodily harm. § 776.06(1), Fla. Stat. (2004). A defendant is engaged in the use of deadly force where the natural, probable, and foreseeable consequences of the defendant's acts are death. See DeLuge, 710 So.2d at 84; Garramone v. State, 636 So.2d 869, 871 (Fla. 4th DCA 1994). The proper focus is on the nature of the force used by the defendant and not the end result. See DeLuge, 710 So.2d at 84; Garramone, 636 So.2d at 871.
If the type of force used is clearly deadly or non-deadly as a matter of law, only the applicable instruction should be given. DeLuge, 710 So.2d at 84. Where the evidence at trial does not establish that the force used by the defendant was deadly or non-deadly as a matter of law, the question is a factual one to be decided by the jury, and the defendant is entitled to jury instructions on the justifiable use of both types of force. Id.; see also Mathis v. State, 31 Fla. L. Weekly D2639, ___ So.2d ___, 2006 WL 3017251 (Fla. 1st DCA Oct. 25, 2006), rev. denied, 954 So.2d 1156 (Fla.2007); Mathews v. State, 799 So.2d 265 (Fla. 1st DCA 2001). Weighing the evidence is the sole prerogative of the jury and the trial court should decide whether to give an instruction without weighing the evidence. Mathews, 799 So.2d at 266.
In Florida, the only type of force that has been held to be deadly as a matter of law is the discharge of a firearm. See Mathis, 31 Fla. L. Weekly at D2640, ___ So.2d at ___; Mathews, 799 So.2d at 266; DeLuge, 710 So.2d at 84; Garramone, 636 So.2d at 871. The force involved in the use of a motor vehicle to strike an individual has been held to present a jury question as to whether the force was deadly. Cooper v. State, 573 So.2d 74 (Fla. 4th DCA 1990) (whether car traveling at a decent rate of speed is deadly force was jury question).
While we recognize that the use of a motor vehicle to strike an individual would normally be found to constitute the use of deadly force, we can envision circumstances in which a jury could reasonably find otherwise. In the present case, the jury should have been given both instructions so that it could evaluate whether the force used was deadly or non-deadly and whether its use was justified.
REVERSED.
SAWAYA and TORPY, JJ., concur.
NOTES
[1] No knife was found during the investigation.