CONNER, J.
Glenn A. Larsen timely appeals a final judgment and sentence adjudicating him guilty of aggravated battery with a deadly weapon. Larsen claims the trial court abused its discretion when it denied his request for a jury instruction on the justifiable use of non-deadly force. Finding no abuse of discretion, we affirm.
Larsen was charged by information with aggravated battery with a deadly weapon on Thomas O’Hagen. On the day of the incident, O’Hagen met a friend at a bar. While O’Hagen and his friend shot pool, Larsen, along with Stephan LaPlante and Nikolas Lee, who were roommates of Larsen, arrived at the bar. At some point, LaPlante noticed his van keys were missing as well as his van. O’Hagen then gave LaPlante a ride back home. A half hour later, Larsen and Lee arrived at the house in LaPlante’s van.
According to O’Hagen, the other three men got into an altercation over the van, and he tried to break it up. As the altercation continued, O’Hagen went out to sit on the porch. Larsen then walked out of the house and stood in the middle of the street. Larsen said something that O’Ha-gen could not understand, then walked back onto the porch and stabbed O’Hagen with a knife. O’Hagen denied that he argued with Larsen, grabbed him by the throat, slapped him, hit him in the head, pushed him down, or prevented him from moving.
According to Larsen, after walking home from the bar, Lee stated that there were errands that LaPlante wanted them both to run, and Lee decided to use La-Plante’s van. When Lee and Larsen returned to the house, LaPlante and O’Ha-gen came out and began screaming at them about the van. Larsen got the sense that Lee did not have permission to take the van. Larsen tried to go inside, but O’Hagen would not let him. LaPlante and Lee went inside, but O’Hagen grabbed Larsen and backed him away from the door into one of the chairs on the porch. O’Hagen was angry about the van and wanted to know where they had taken it. He also accused Larsen of taking a pack of cigarettes from him at the bar. Larsen tried to explain that he did not know that Lee took the van without permission and that he did not take the cigarettes. O’Ha-gen continued to yell at him as he kept him seated in the chair. O’Hagen also threatened him with his fists. O’Hagen used his left hand to grab Larsen and hold him in the chair while he smacked Larsen with the open palm of his right hand. O’Hagen then backed away and told Larsen to stay in the chair. About five minutes later, O’Hagen came out of the house, went straight toward Larsen and started smacking him again. After being hit three or four times, Larsen reached into his pocket, pulled out his knife, and opened the blade. At this point, O’Hagen stopped hitting him and leaned back off of Larsen. Larsen had the knife down by his thigh; he and O’Hagen looked at each other, and O’Hagen made another move toward him; at this point, Larsen stood up and stabbed O’Hagen in the neck. Larsen explained that he was trying to defend himself because he feared O’Hagan was going to continue to hit him, O’Hagen was a lot bigger and meaner than he was, and O’Ha-gen had hit him earlier in the week.
Dr. Ralph Guarneri, an on-call trauma surgeon at Broward General Hospital, testified that O’Hagen had a penetrating stab wound to his right neck. Guarneri further testified that the injury was life-threaten *974 ing and that O’Hagen would have died without treatment.
At trial, Larsen requested the trial court instruct the jury on the justifiable use of both deadly and non-deadly force. The trial court determined that while a knife is not always a deadly weapon, based on the facts of this case, the knife was a deadly weapon as a matter of law. Therefore, the trial court declined to give the justifiable use of non-deadly force instruction.
Larsen argues that the trial court erred in finding that the knife was a deadly weapon as a matter of law because whether a weapon is deadly is a question of fact to be determined by the jury based on the facts and circumstances of each individual case. The State submits that the trial court did not err when it only force instruction because Larsen’s intentional stabbing of O’Hagen’s neck with a knife can be deemed only deadly force, and not nondeadly force.
This court reviews a trial court’s withholding of a requested jury instruction under an abuse of discretion standard. Williams v. State, 34 So.3d 768, 770 (Fla. 2d DCA 2010) (citing Broum v. State, 11 So.3d 428, 432 (Fla. 2d DCA 2009)). “ ‘Where there is any evidence introduced at trial which supports the theory of the defense, a defendant is entitled to have the jury instructed on the law applicable to his theory of defense....’” Arthur v. State, 717 So.2d 193, 194 (Fla. 5th DCA 1998) (quoting Bryant v. State, 412 So.2d 347, 350 (Fla.1982)). “A defendant is entitled to an instruction on his theory of defense however flimsy the evidence is which supports that theory, or however weak or improbable his testimony may have been.” Id. (internal citations and quotations omitted).
“Under Florida law, a person is justified in using deadly force in self-defense only when the person reasonably believes that such force is necessary to prevent one’s imminent death or great bodily harm or to prevent the imminent commission of a forcible felony.” Cruz v. State, 971 So.2d 178, 182 (Fla. 5th DCA 2007). In contrast, “[n]on-deadly force may be used when and to the extent that a person reasonably believes that the use of force is necessary to defend one’s self or another against the imminent use of unlawful force.” Id.
When determining whether the force used is deadly or non-deadly, “[t]he proper focus is on the nature of the force used by the defendant and not the end result.” Id. “If the type of force used is clearly deadly or non-deadly as a matter of law, only the applicable instruction should be given.” Id. (citing DeLuge v. State, 710 So.2d 83, 84 (Fla. 5th DCA 1998)). “Where the evidence at trial does not establish that the force used by the defendant was deadly or non-deadly as a matter of law, the question is a factual one to be decided by the jury, and the defendant is entitled to jury instructions on the justifiable use of both types of force.” Id.
A knife can be used with deadly or without deadly force. In Waldo v. State, 728 So.2d 280 (Fla. 3d DCA 1999), quashed in part on other grounds, 759 So.2d 674 (Fla.2000), the state presented evidence showing that the defendant was caught attempting to steal from an automobile owned by Johnson. Upon observing the defendant’s attempt, Johnson’s friend got in a scuffle with the defendant. The defendant thrust a knife into the friend’s chest in the course of this scuffle. The trial court refused the defendant’s request to instruct the jury on the defense of justifiable use of non-deadly force. While the Third District stated that it was not holding that the use of a knife is, by definition, *975 a deadly weapon, it held that the act of thrusting a knife into someone’s chest cavity, home of many vital organs, is likely to cause death or great bodily harm. Id. at 281. In contrast, in DeLuge v. State, 710 So.2d 83 (Fla. 5th DCA 1998), there was evidence that the defendant made a single slashing motion with a razor blade towards the victim’s hand after the victim had attempted to stab him with a knife, and then the defendant wrestled with her in an attempt to get her to drop the knife. Id. at 84. The Fifth District held that this use of force, if believed by a jury, did not amount to the use of deadly force as a matter of law because death was not the natural, probable and foreseeable consequences of the defendant’s act of swinging the razor blade aimed for the victim’s hand. Id. at 84-85. Accordingly, the court held that the defendant was entitled to an instruction on the use of non-deadly force. Id. at 85.
Although Florida courts have clearly and consistently emphasized that the determination of whether a weapon is deadly is a question to be decided by a jury, this general rule is applicable only where the evidence of a particular case does not establish that the weapon used was deadly as a matter of law. Our courts have held a knife to be a deadly weapon as a matter of law when viewed in context of how it was used and where it struck the victim. Here, Larsen struck the victim in the neck area with the knife. The Waldo court based its holding on the fact that the victim was struck in the chest cavity, home of many vital organs. The court held that a stab wound to this area is likely to cause death or great bodily harm, and that there was simply no way to interpret such an act as being non-deadly. Similarly, here, Dr. Guarneri testified that important structures located in the neck include the esophagus, the hypotherynx, the trachea, the larynx, and the blood supply to the brain. Further, Dr. Guarneri testified that without medical attention, the victim would have bled to death as his injuries were life threatening. Thus, the trial court properly determined that the nature of the weapon, a sharp knife, when viewed in the context of where it was used to strike the victim, the neck, home of many vital body structures, constituted deadly force as a matter of law. Therefore, the trial court did not abuse its discretion in refusing to give a jury instruction on the justifiable use of non-deadly force.

Affirmed.

WARNER and POLEN, JJ., concur.