LEVINE, J.
Appellant raises the following issue for our consideration: whether the trial court erred in denying appellant’s requested *402 jury instructions on the justifiable use of non-deadly force and in defense of property, where there was evidence that appellant’s firearm discharged accidentally. We find that the trial court did not err in declining to give the requested jury instructions, since the discharge of the firearm is a use of deadly force as a matter of law.
During trial, the state presented testimony that Darren Williams brought a bottle of liquor, which in fact belonged to his sister, Danielle Williams, to a Christmas party at appellant’s home. Danielle and her brother had been lifelong friends with appellant. When Danielle found out, she became upset. She went to appellant’s home in order to retrieve the bottle. When Danielle rang the doorbell, she asked to speak to appellant. Appellant eventually came outside but refused to give Danielle her bottle back.
After refusing Danielle’s request again, appellant pulled up his shirt, pulled out a gun, and pointed it at Danielle. She tried to walk around appellant but appellant pushed her against a wall, and then she heard a “pop.” Danielle realized she had been shot in her arm. At the scene, appellant told deputies that he “didn’t mean to shoot her. It was an accident.”
At trial, a detective testified that Danielle believed the shooting was accidental. The detective said that Danielle “indicated that ... they were friends, so she didn’t believe there would be any reason why a friend would shoot a friend.” Finally, Danielle told the detective that she believed it was an accident.
A firearms and tool mark examiner testified that four-and-three-quarters pounds of pressure was required to fire the gun.
Defense witnesses Danika Sanz and Ryan Serpa testified to seeing Danielle at the door of the .appellant’s home screaming and cursing at appellant, Danielle threw things after entering the house. Appellant repeatedly told Danielle to leave and threatened to call the police if she would not leave his home. Danielle and appellant went outside the house, and she continued to scream and curse at appellant. Danika and Ryan heard a “pop” or a “firecracker,” and appellant said to call 911 because he had accidentally shot Danielle. Danika and Ryan heard Danielle tell the police and paramedics that the shooting was an accident.
Appellant testified at trial that Danielle called him on the telephone asking for her bottle back or money. Danielle also threatened to kill appellant and said that she was going to bring men with her to “mess [him] up.” Danielle showed up at his door about thirty or forty minutes later. Danielle was banging at his front door, screaming, and very angry. According to appellant, Danielle threatened to stab him.'
Appellant claimed to see something sharp in Danielle’s hand, which prompted appellant to draw his gun, which he had brought for his safety and the safety of his family. Although appellant was armed, he claimed he had no intention of using the firearm. Appellant also stated that he subsequently found out that the sharp object in Danielle’s hand was, in fact, a car key.
Appellant testified that Danielle entered his house and started throwing things. Appellant tried to get Danielle off his property, and a shoving match ensued during which appellant’s gun went off. Appellant claimed that he was trying to push Danielle and close his gate at the same time. Appellant had the gun in one hand, and he was using both hands to get Danielle off his property when the gun discharged.
*403 At the jury trial, the trial court agreed to give the jury instruction on deadly force and ruled that the instruction on non-deadly force was not applicable. The trial court concluded that the discharge of a firearm constituted deadly force as a matter of law. Appellant was found guilty as charged of aggravated assault with a firearm and culpable negligence. This appeal ensues.
We review the “trial court’s withholding of a requested jury instruction under an abuse of discretion standard.” Larsen v. State, 82 So.3d 971, 974 (Fla. 4th DCA 2011). “Failure to give a standard jury instruction is reversible error when the omitted standard jury instruction goes to the heart of the defendant’s case.” Arboleda v. State, 645 So.2d 48, 50 (Fla. 3d DCA 1994).
In the present case, the trial court instructed the jury on justifiable use of deadly force, and declined to instruct the jury on justifiable use of non-deadly force, including defense of property. The requested standard instruction on non-deadly force states:
An issue in this case is whether the defendant acted in self-defense. It is a defense to the offense with which (defendant) is charged if the ... [injury to] (victim) resulted from the justifiable use of non-deadly force.
[[Image here]]
(Defendant) would be justified in using non-deadly force against (victim) if the following two facts are proved:
1.(Defendant) must have reasonably believed that such conduct was necessary to defend [himself] ... against (victim’s) imminent use of unlawful force against the [defendant]....
2.The use of unlawful force by (victim) must have appeared to (defendant) to be ready to take place.
Fla. Std. Jury Instr. (Crim.) 3.6(g).
The requested standard jury instruction on defense of property states:
(Defendant) would be justified in using non-deadly force against (victim) if the following three facts are proved:
1. (Victim) must have been trespassing or otherwise wrongfully interfering with land or personal property.
2. The land or personal property must have lawfully been in (defendant’s) possession, or in the possession of a member of [his] ... immediate family or household, or in the possession of some person whose property [he] ... was under a legal duty to protect.
3. (Defendant) must have reasonably believed that [his] ... use of force was necessary to prevent or terminate (victim’s) wrongful behavior.

Id.

Non-deadly force may be used when, and to the extent, that a person reasonably believes that the use of non-deadly force is necessary to defend oneself against the imminent use of unlawful force. Michel v. State, 989 So.2d 679, 681 (Fla. 4th DCA 2008). “When determining whether the force used is deadly or non-deadly, ‘[t]he proper focus is on the nature of the force used by the defendant and not the end result.’ ” Larsen, 82 So.3d at 974 (citation omitted). “If the type of force used is clearly deadly or non-deadly as a matter of law, only the applicable instruction should be given. Otherwise the question of whether the force used by a defendant was ‘deadly’ or ‘non-deadly’ should be submitted to the jury.” Carter v. State, 115 So.3d 1031, 1036 (Fla. 4th DCA 2013) (citation omitted); see also Larsen, 82 *404 So.3d at 974; Garramone v. State, 636 So.2d 869, 871 (Fla. 4th DCA 1994).
The discharge of a firearm has been held to be the use of deadly force as a matter of law. Carter, 115 So.3d at 1037; Miller v. State, 613 So.2d 530, 531 (Fla. 3d DCA 1993). In Miller, the court found that “Hiring a firearm in the air,” even as a warning shot, constituted as a matter of law the use of deadly force by the defendant. 613 So.2d at 531. Thus, the trial court did not commit reversible error by not giving the instruction of the use of non-deadly force. Id.
In the present case, unlike in Miller, there was some evidence that supported appellant’s contention that the firearm discharged accidentally. The victim’s statements at the scene, as well as the testimony of witnesses, supported appellant’s contention that the firearm was not discharged on purpose, but rather discharged accidentally. Thus, we have to determine if the accidental discharge of a firearm is the use of deadly force as a matter of law, like when the firearm is volitionally discharged, such as when firing a warning shot.
In Howard v. State, 698 So.2d 923 (Fla. 4th DCA 1997), our court found the trial court erred in failing to give an instruction on the justifiable use of non-deadly force, where the defendant was accused of stabbing her husband with a knife. In Howard, the trial court gave the instruction on the justifiable use of deadly force, but refused to give the instruction on the use of non-deadly force. We held this was error:
Appellant’s defense ... was battered women’s syndrome. She claimed that her husband fell into her knife while lunging at her rather than that she thrust it at him. The question of whether appellant’s act of waving two knives in front of her to shield her face from her husband’s assault constituted deadly or non-deadly force should have been a question for the jury under the proper instruction from the court.
Id. at 925.
Clearly, the critical difference between Howard and the present case is that the defendant used a firearm instead of a knife. Although a knife is a weapon, it is not necessarily a deadly weapon. Id. In contrast, a firearm is a deadly weapon, and firing a firearm constitutes deadly force:
Firing a firearm in the air, even as a so-called “warning shot,” constitutes as a matter of law the use of deadly force, that is, the use of a force likely to cause death or great bodily harm-and is not, as urged, the use of force not likely to cause death or great bodily harm. A firearm is, by definition, a deadly weapon which fires projectiles likely to cause death or great bodily harm; whenever it is fired in the vicinity of human beings, as here, there is real danger that the fired projectile may hit someone, even if not aimed at anyone, as such projectiles are quite capable of ricocheting off nearby objects and hitting people in the area. Consequently, no reversible error is presented in the refusal to give a jury instruction on the justifiable use of non-deadly force.
Miller, 613 So.2d at 531 (emphasis added and deleted).
Other state courts have considered this issue in differing contexts. The New Jersey Supreme Court determined that once a firearm is discharged, regardless of whether it was accidental or not, the defendant is not entitled to a jury instruction on use of non-deadly force:
Like many other jurisdictions, we are also persuaded that a critical difference exists between brandishing a gun and actually discharging it. Although *405 brandishing a weapon does not constitute deadly force when its purpose is to threaten the use of deadly force if necessary, once the weapon is discharged, deadly force has been used. The discharge, however, does not mean that a claim of accidental discharge is unavailable. That remains a viable defense. What it does mean is that a defendant is not entitled to a jury instruction on the use of non-deadly force in self-defense, because as a matter of law, deadly force has been used.
State v. Moore, 158 N.J. 292, 729 A.2d 1021, 1029 (1999), abrogated on other grounds by State v. Rodriguez, 195 N.J. 165, 949 A.2d 197 (2008). See also Commonwealth v. Dyer, 460 Mass. 728, 955 N.E.2d 271, 291 (2011) (holding that defendant used deadly force by causing victim’s death by gunshot; defendant’s argument that gunshot was accidental “does not put the use of nondeadly force in self-defense into play as a justification for the killing, but simply raises a defense of accident”); State v. Lucero, 147 N.M. 747, 228 P.3d 1167 (2010) (holding that defendant was not entitled to a jury instruction on non-deadly force where defendant unintentionally used deadly force resulting in death).
Here, appellant did discharge a firearm in the vicinity of other people. The fact that in Miller the discharge was purposeful and in the present case the discharge was accidental does not make the force any less “deadly.” It is the discharge of the firearm that makes it deadly force as a matter of law. “[Ojnly the discharge of a firearm has been held to be deadly force as a matter of law.” Howard, 698 So.2d at 925. Further, although there is record evidence that the discharge was accidental, appellant also testified that he drew his firearm, and thus introduced the potential use of deadly force to this escalating situation. Appellant cannot reasonably claim that the trial court erred in not giving the jury instruction on the use of non-deadly force, once appellant drew the firearm and subsequently the firearm discharged, hitting the victim.
In his second issue on appeal, appellant argues, and the state concedes, that remand is required because the trial court orally pronounced that the sentences were to run concurrently, but the written judgment and sentence does not reflect this. We remand for the trial court to correct this scrivener’s error.
For all the above reasons, we affirm and remand for correction of the scrivener’s error.
TAYLOR and KLINGENSMITH, JJ., concur.