DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**SHANE SCOTT HART,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D16-3766

[May 30, 2018]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; John Kastrenakes, Judge; L.T. Case No. 50-2015-CF-003815-AXXX-MB.

Carey Haughwout, Public Defender, and Karen E. Ehrlich, Assistant Public Defender, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Joseph D. Coronato, Jr., Assistant Attorney General, West Palm Beach, for appellee.

CIKLIN, J.

Shane Scott Hart appeals his conviction and sentence for felony battery with a weapon. He argues that the trial court erred in denying his request for an instruction on the justifiable use of non-deadly force. We agree with Hart that the defense evidence supported giving the instruction and that the error was not harmless. Thus, we must reverse and remand for a new trial.

After a physical altercation with his neighbor, Hart was charged with aggravated battery with a deadly weapon causing great bodily harm, permanent disability, or permanent disfigurement. Hart utilized a serrated knife in the altercation, leaving his neighbor with life-threatening injuries, including cuts to the face, neck, and back of the head.

According to the defense evidence at trial, Hart was involved in a serious car accident several months prior to the altercation, necessitating hospitalization for five days and two surgeries to repair his broken neck.

Medical personnel warned him that he could be paralyzed if he fell or moved his neck the wrong way. At the time of the altercation, he was wearing a hard, stabilizing neck brace that limited his mobility. Hart testified that he could not look down and could not turn to the side without "turning my whole body with it pretty much."

Hart further testified that, while conversing with his neighbor in his neighbor's front yard, he commented on the neighbor's taste in women. The neighbor responded by grabbing Hart's neck brace and moving Hart's body by "kind of thr[owing him] around a little bit back and forth" before pushing him into a grill. While trying to get his balance, Hart felt something "like a handle" on the grill, so he picked it up and swung it at the neighbor. Hart did not know what the object was or how many times he struck the neighbor, and he did not see where the strikes landed. Hart did not intend to hurt the neighbor; he just wanted to get the neighbor off of him. Hart was afraid the neighbor was going to kill or paralyze him.

The trial court denied Hart's request for an instruction on the justifiable use of non-deadly force, reasoning that the victim was injured in "vital locations on the human body," and thus, only the instruction on the justifiable use of deadly force was supported by the evidence. The jury returned a verdict for the lesser included offense of felony battery and found that Hart carried, displayed, used, threatened, or attempted to use a weapon.

On appeal, Hart challenges the trial court's denial of his request for a jury instruction on the justifiable use of deadly force. "The standard of review for jury instructions is abuse of discretion." *Garrido v. State*, 97 So. 3d 291, 294 (Fla. 4th DCA 2012) (quoting *Zama v. State*, 54 So. 3d 1075, 1077 (Fla. 4th DCA 2011)).

"Where there is any evidence introduced at trial which supports the theory of the defense, a defendant is entitled to have the jury instructed on the law applicable to his theory," however weak the evidence or improbable the defense. *Larsen v. State*, 82 So. 3d 971, 974 (Fla. 4th DCA 2011) (citation omitted).

> "Under Florida law, a person is justified in using deadly force in self-defense only when the person reasonably believes that such force is necessary to prevent one's imminent death or great bodily harm or to prevent the imminent commission of a forcible felony." *Cruz v. State*, 971 So. 2d 178, 182 (Fla. 5th DCA 2007). In contrast,

2

> "[n]on-deadly force may be used when and to the extent that a person reasonably believes that the use of force is necessary to defend one's self or another against the imminent use of unlawful force." *Id.*

*Larsen,* 82 So. 3d at 974 (alteration in original).

Where force is deadly as a matter of law, or non-deadly as a matter of law, then the singular applicable instruction should be given. *Id.* "Where the evidence at trial does not establish that the force used by the defendant was deadly or non-deadly as a matter of law, the question is a factual one to be decided by the jury, and the defendant is entitled to jury instructions on the justifiable use of both types of force." *Id.* (quoting *Cruz,* 971 So. 2d at 182).

To determine whether force is deadly as a matter of law, "it is the nature of the force and not the end result that must be evaluated. Deadly force occurs where the natural, probable and foreseeable consequences of the defendant's acts are death. By statute, deadly force is defined as force likely to cause death or great bodily harm." *Garramone v. State,* 636 So. 2d 869, 871 (Fla. 4th DCA 1994) (citing § 776.06, Fla. Stat. (1993)); *see also Larsen,* 82 So. 3d at 974 ("When determining whether the force used is deadly or non-deadly, '[t]he proper focus is on the nature of the force used by the defendant and not the end result.'" (alteration in original) (quoting *Cruz,* 971 So. 2d at 182)).

Thus, whether a knife constitutes deadly force as a matter of law depends on how it was used. For example, courts have determined that the use of a knife was deadly force as a matter of law where it was used to stab a victim in the neck or the chest, as the area of injury was home to vital body parts. *See Larsen,* 82 So. 3d at 975 (affirming trial court's determination that a sharp knife used to stab victim's neck was deadly force as a matter of law); *Waldo v. State,* 728 So. 2d 280, 281 (Fla. 3d DCA 1999) ("[T]he defendant thrust a knife into [the victim]'s chest. The nature of such an act is unmistakably likely to cause death or great bodily harm."), *quashed in part on other grounds,* 759 So. 2d 674 (Fla. 2000). On the other hand, where there was evidence to support the defendant's assertion that he made a single slashing motion with a razor blade toward the victim's hand after the victim attempted to stab him with a knife, the appellate court concluded, "This use of force, if believed by a jury, does not amount to the use of deadly force as a matter of law, such that the natural, probable and foreseeable consequences of DeLuge's act of swinging the razor blade was death." *DeLuge v. State,* 710 So. 2d 83, 85 (Fla. 5th DCA 1998). Likewise, in *Howard v. State,*

698 So. 2d 923, 924-25 (Fla. 4th DCA 1997), despite the victim's fatal knife wound to the heart, this court determined that the use of force was not deadly as a matter of law. The defendant presented evidence that she was waving two knives in front of her face to shield it, and the victim, her husband, impaled himself on her knife while lunging at her. *Id.* at 924. Accordingly, "[t]he question of whether appellant's act of waving two knives in front of her to shield her face from her husband's assault constituted deadly or non-deadly force should have been a question for the jury under the proper instruction from the court." *Id.* at 925.

Turning to the facts at hand, despite the location and severity of the neighbor's injuries, the evidence here supported giving both the deadly and the non-deadly force instructions. According to the defense evidence and theory of the case, Hart was attacked while wearing a neck brace that limited his mobility and range of vision. Without knowing what he was holding, Hart grabbed an object and swung it in the victim's direction without knowing where the blows were landing or of the resulting injuries. He did not intend to injure the victim, but only intended for the victim to let him go.

It is not clear that death is the natural, probable, and foreseeable consequence of swinging a knife somewhat blindly—and with limited ability to aim—in the general direction of a victim. Consequently, the nature of the force was not deadly as a matter of law, and whether Hart's actions constituted deadly or non-deadly force was a question for the jury.

The trial court relied on *Larsen* in erroneously determining that the force was deadly as a matter of law because the neighbor's injuries were to vital locations on his body. Despite similarly involving knife-inflicted injuries to the neck, *Larsen* is distinguishable. Larsen intentionally stabbed his victim in the neck, *Larsen*, 82 So. 3d at 974, whereas Hart did not intend the wounds he imposed, at least according to the defense theory. The mere comparability of the injuries does not support a conclusion that the force was deadly as a matter of law under the facts of this case.

The error was not harmless. Under the harmless error test, the state bears the burden of proving "that there is no reasonable possibility that the error contributed to the conviction." *State v. DiGuilio*, 491 So. 2d 1129, 1135 (Fla. 1986). The jury may have found that Hart was not in reasonable fear of his life, as is required under the deadly force instruction, but had it been given the opportunity to consider whether the force was necessary to defend himself against imminent and unlawful

4

force, as is provided in the non-deadly force instruction, it may have reached a different conclusion.

Because the trial court erred in determining that the use of force was deadly as a matter of law and in denying an instruction on the justifiable use of non-deadly force, we reverse and remand for a new trial. On retrial, if the evidence supports giving the non-deadly force instruction and the defendant requests such an instruction, it should be given.

*Reversed and remanded for a new trial.*

CONNER and FORST, JJ., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***