DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**RICHARD BURNS,**
Petitioner,

v.

**STATE OF FLORIDA,**
Respondent.

No. 4D22-3247

[May 24, 2023]

Petition for Writ of Prohibition to the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Michael I. Rothschild, Judge; L.T. Case No. 21-001599CF10A.

Ari S. Goldberg and Lawrence M. Meltzer of Meltzer & Bell, P.A., West Palm Beach, for petitioner.

Ashley Moody, Attorney General, Tallahassee, and Alexandra A. Folley, Assistant Attorney General, West Palm Beach, for respondent.

ARTAU, J.

That a person's home is his or her "castle" is one of the most basic tenets of our jurisprudence.[1]  However, for Richard Burns ("Burns"), charged with aggravated assault with a deadly weapon for openly carrying and loading his firearm in the yard of his own home, the "castle" our law entitled him to protect was relegated to a defenseless dungeon.  We conclude that the trial court erred in denying his motion for immunity from prosecution pursuant to Florida's Stand Your Ground law.  We therefore grant his petition for writ of prohibition because he is legally entitled to immunity from prosecution on the aggravated assault charge.

---

[1] The "now-famous observation that 'the house of every one is to him as his castle and fortress, as well for his defence against injury and violence, as for his repose'" was first made by an English court in 1604.  *Wilson v. Lane*, 526 U.S. 603, 609-10 (1999) (quoting *Semayne's Case*, (1604) 77 Eng. Rep. 194, 195 (KB)).

## *Background*

The State charged Burns with aggravated assault with a deadly weapon for his response to a verbal confrontation with a five-man tree-cutting crew that occurred in the yard of the home he leases as a residence for himself and his family, which includes his fiancée and her son. After one crew member made sexually suggestive gestures towards his fiancée and another waved a running chainsaw towards his dogs with the apparent threat to dismember them, Burns demanded that the crew members leave his property. Following their refusal to immediately leave, Burns retrieved his handgun from his residence and openly carried it in his yard while loading it by advancing a bullet into its chamber.

Burns moved to dismiss the aggravated assault charge on grounds that he used a justifiable level of force during the incident. After considering the evidence presented at the immunity hearing prompted by the motion, the trial court found that Burns neither pointed the firearm at any member of the tree-cutting crew nor did he verbally threaten any of them after loading the weapon. Instead, as the trial court determined, Burns simply "held the firearm by his side and continued to engage in a verbal confrontation demanding that the workers leave."[2]

Relying on *Little v. State*, 302 So. 3d 396 (Fla. 4th DCA 2020), the trial court denied Burns' motion on grounds that his "menacing" act of chambering a round in the firearm, coupled with the display of the weapon without pointing it at anyone, constituted an unjustified threatened use of deadly force. The trial court determined that, because Burns was not in reasonable fear of imminent death or great bodily harm at the time of the incident, his actions were not justified under the circumstances.[3] We disagree.

---

[2] In accordance with the standard of review applicable to our disposition of Burns' petition, we defer to the trial court's findings of fact, but review de novo the trial court's legal conclusions drawn from those facts. *See, e.g.*, *Tover v. State*, 106 So. 3d 958, 959 (Fla. 4th DCA 2013) (prohibition petition seeking review of trial court's denial of Stand Your Ground immunity is reviewed with deference to the trial court's factual findings, but de novo as to the trial court's conclusions of law).

[3] A person is only "justified in using or threatening to use deadly force if he or she reasonably believes that using or threatening to use such force is necessary to prevent imminent death or great bodily harm to himself or herself or another or to prevent the imminent commission of a forcible felony." § 776.012(2), Fla. Stat. (2020).

***Analysis***

The display of a firearm constitutes non-deadly force as a matter of law. *See, e.g., Cunningham v. State*, 159 So. 3d 275, 277 (Fla. 4th DCA 2015) (recognizing that "the *mere display of a gun* is not deadly force as a matter of law" (emphasis in original) (citing *Carter v. State*, 115 So. 3d 1031, 1037 n.3 (Fla. 4th DCA 2013)); *see also Howard v. State*, 698 So. 2d 923, 925 (Fla. 4th DCA 1997) ("[E]ven the display of a deadly weapon, without more, is not 'deadly force.'" (citing *Toledo v. State*, 452 So. 2d 661, 662 n.3 (Fla. 3d DCA 1984)).

Moreover, the trial court's reliance on our decision in *Little*, in support of its conclusion that Burns' actions amounted to a threatened use of deadly force, was entirely misplaced. In *Little*, we decided only that ineffective assistance of counsel did not appear on the face of the direct appeal record based on defense counsel's failure to argue, at the defendant's pretrial Stand Your Ground hearing, that the case involved the use of non-deadly force rather than deadly force. *See Little*, 302 So. 3d at 398 (framing the issue).

The defendant in *Little* was charged with and convicted of aggravated assault with a deadly weapon and battery. *Id.* After considering the proof presented at the pretrial Stand Your Ground immunity hearing in *Little*, the trial court determined that the defendant "pulled out his firearm" in response to his mistaken belief that his truck was about to be stolen by a young man he had observed in his neighborhood. *Id.* at 399. The trial court found that the defendant was not justified in threatening deadly force when he "pointed [the firearm] at [the young man], and ordered him to get face down on the ground" while holding him down by placing his foot on the young man's back to prevent him from leaving. *Id.*

We commented in *Little* that "[w]hen a person points a loaded firearm at another person and issues a command [to that person] to do something, this is generally an implied declaration that the failure to abide by the command will result in the discharge of the firearm, i.e., deadly force." *Id.* at 404 (footnote omitted). However, we acknowledged and did not deviate from the basic principle set forth in "numerous Florida cases that have determined that the display of a deadly weapon, without more, is not deadly force." *Id.* at 402 (internal quotations omitted) (quoting *Howard v. State*, 698 So. 2d 923, 925 (Fla. 4th DCA 1997)).

Unlike the defendant in *Little*, Burns merely openly carried his firearm on his home property. Burns did not point the firearm in the direction of another, nor did he threaten or physically force another to do something

3

or risk suffering the discharge of a pointed firearm.

The Second Amendment to the United States Constitution guarantees "an individual right to keep and bear arms." *District of Columbia v. Heller*, 554 U.S. 570, 595 (2008). Central to this right, as the Supreme Court explained in *Heller*, is "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Heller*, 554 U.S. at 635; *see also McDonald v. City of Chicago*, 561 U.S. 742, 791 (2010) (recognizing that *Heller* "held that the Second Amendment protects the right to possess a handgun in the home for the purpose of self-defense"); *Norman v. State*, 159 So. 3d 205, 211 (Fla. 4th DCA 2015) (describing *Heller*'s holding as being "that the Second Amendment protect[s] the possession of guns in the home for self-defense").

The federal constitutional right guaranteed by the Second Amendment stands as a barrier between the individual and any unjustified federal or state intrusion upon that right. *See Heller*, 554 U.S. at 592 (explaining that "the individual right to possess and carry weapons in case of confrontation," described in the Second Amendment, was "a *pre-existing* right"); *see also McDonald*, 561 U.S. at 791 (applying the Second Amendment right discussed in *Heller* to the states); *Norman*, 159 So. 3d at 211 (noting that the Second Amendment imposes "restrictions not only on the federal government but [on] the states as well").

Florida grants to all persons who have not been legally disqualified from owning, possessing, and using firearms not only an individual state constitutional right "to keep and bear arms in defense of themselves," Art. I, § 8(a), Fla. Const., but also the statutory right "to own, possess, and lawfully use" weapons, including firearms, at a person's "home or place of business" without the restrictions against the open carrying of weapons or firearms imposed by section 790.053, Florida Statutes (2020), or the requirements of a concealed carry license imposed by section 790.06, Florida Statutes (2020). *See* § 790.25(3)(n), Fla. Stat. (2020) ("The provisions of ss. 790.053 and 790.06 do not apply in the following instances [inclusive of persons on their home property or place of business], and, despite such sections, it is lawful for [such persons] to own, possess, and lawfully use firearms and other weapons, ammunition, and supplies for lawful purposes [while on their home property or place of business as permitted by subsection (3)(n)][.]").

In other words, Florida provides a statutory right to openly carry a weapon or firearm while on one's home property or place of business. Even when one is not at his or her home property or place of business, it is not unlawful in Florida to "briefly and openly display" a lawfully carried firearm

4

"to the ordinary sight of another person," so long as the firearm is not being "intentionally displayed in an angry or threatening manner" when the display of the firearm is "not in necessary self-defense." § 790.053(1), Fla. Stat. (2020). These statutes recognize that a firearm is not just a collector's item that is stored out-of-sight indefinitely. For a firearm to be useful for self-defense, it must be readily available and loaded, neither of which can be effectively and safely done if the firearm cannot be taken out of concealment or storage and openly displayed while being loaded and held.

As section 790.25(3)(n) permits, Burns had the right to openly carry the firearm he displayed and loaded because he was on his home property. Even if Burns had not been on his home property, it would not have been unlawful, as authorized by section 790.053(1), for him to "briefly and openly display" his firearm in anticipation of possibly needing to use it for his and his fiancée's protection during his confrontation with the tree-cutting crew.

In addition, after Burns asked the tree-cutting crew to leave his property, and they refused to immediately do so, they became trespassers, justifying his legal right to use non-deadly force, including his constitutional and statutory right to openly carry or display his loaded firearm, to assist him in not only terminating the trespass, but also in preventing the reasonably perceived tortious and criminal interference with his dogs, which are his personal property.[4] *See* § 776.031(1), Fla. Stat. (2020) (justifying the use or threatened use of non-deadly force, "when and to the extent" necessary, "to prevent or terminate" another's "trespass on, or other tortious or criminal interference with," the non-dwelling portions of one's "real" or "personal property");[5] *see also* § 810.09(1)(a)2., Fla. Stat. (2020) ("trespass on property other than a

---

[4] "Florida law considers animals to be personal property." *State v. Milewski*, 194 So. 3d 376, 378 (Fla. 3d DCA 2016).

[5] Notably, the plain language of section 776.031(1) would not have prohibited Burns from using non-deadly force before the tree-cutting crew became trespassers as the statute allows the use of non-deadly force when a person "reasonably believes that such conduct is necessary to *prevent or* terminate the other's trespass on, *or other tortious or criminal interference with, either* real property other than a dwelling *or personal property*." *See* § 776.031(1), Fla. Stat. (2020) (emphasis added); *see also Sparkman v. McClure*, 498 So. 2d 892, 895 (Fla. 1986) (explaining that when the Legislature uses the word "or" in a statute it is to be interpreted in the disjunctive indicating "that alternatives were intended").

structure or conveyance" occurs when a person "willfully enters *or remains* in any property other than a structure or conveyance" if the property "is the unenclosed curtilage of a dwelling") (emphasis added);[6] § 828.12(1), Fla. Stat. (2020) ("A person who . . . unnecessarily mutilates, or kills any animal, or causes the same to be done . . . in a cruel or inhumane manner, commits animal cruelty, a misdemeanor of the first degree[.]"); § 828.12(2), Fla. Stat. (2020) ("A person who intentionally commits any act to any animal . . . which results in the cruel death, or excessive or repeated infliction of unnecessary pain or suffering, or causes the same to be done, commits aggravated animal cruelty, a felony of the third degree[.]"). Furthermore, after the confrontation had ensued, it was reasonable for Burns to have anticipated the possibility that he would need to act in self-defense while verbally directing trespassers off his property.

### *Conclusion*

Openly carrying or displaying a firearm, and loading it by advancing a bullet in its chamber for it to be ready for use if needed, does not constitute the unjustified or threatened use of deadly force as a matter of law. Moreover, Burns had a lawful right to openly carry his firearm on his home property. Thus, Burns is entitled to immunity from prosecution for his non-deadly use of his firearm during the incident with the tree-cutting crew. *See* § 776.032(1), Fla. Stat. (2020) (granting "immun[ity] from criminal prosecution" for any use or threatened use of force "permitted in s. 776.012, s. 776.013, *or s. 776.031*" (emphasis added)). We therefore grant Burns' petition for writ of prohibition and direct the trial court to grant his motion to dismiss, thereby discharging him from further criminal prosecution on the aggravated assault charge.

*Petition for writ of prohibition granted; case remanded with instructions.*

CIKLIN and CONNER, JJ., concur.

\*　　　\*　　　\*

***Not final until disposition of timely filed motion for rehearing.***

---

[6] As used in section 810.09(1), "the term 'unenclosed curtilage' means the unenclosed land or grounds, and any outbuildings, that are directly and intimately adjacent to and connected with the dwelling and necessary, convenient, and habitually used in connection with that dwelling." § 810.09(1)(b), Fla. Stat. (2020). In other words, the trespass statute's definition of an "unenclosed curtilage" includes Burns' yard.

6